MILLIKEN BROS., Inc., v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department.   December 31, 1909.)

MUNICIPAL CORPORATIONS (§ 373*)—CONTRACTS—MECHANIC'S LIEN—TIME FOR NOTICE—"COMPLETED."

Lien Law (Laws 1909, c. 38 [Consol. Laws, c. 33]) § 12, provides a lien on the amount due the contractor from a city under a contract for the construction of a public improvement for material or labor furnished for such improvement by giving notice of such lien to specified officers before the improvement is completed and accepted by the city or within 30 days thereafter. *Held* that, with reference to the time for filing a notice of lien, the improvement is completed when it is turned over to and accepted by the city on the architect's certificate, though a specified sum is retained for one year by the city under the contract, as a guarantee, and a further sum is retained for uncompleted work specified.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*

For other definitions, see Words and Phrases, vol. 2, pp. 1366–1368.]

Laughlin, J., dissenting in part.

Appeal from Special Term, New York County.

Action by Milliken Bros., Incorporated, against the City of New York, James D. Murphy Company, and others to foreclose a mechanic's lien. From the judgment rendered, Jerome A. Jackson and others appeal. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Thomas C. Ennever, for appellant Jerome A. Jackson.
Frederick Hulse, for appellant Patrick H. McNulty.
Charles A. Brodek, for appellant Baker, Smith & Co.
Gilbert E. Roe, for appellant Roebling Const. Co.
Arnold L. Davis, for respondent James D. Murphy Co.
John L. O'Brien, for respondent City of New York.

INGRAHAM, J. This was an action to foreclose a mechanic's lien upon the amount due by the city of New York to its contractor, the James D. Murphy Company, who was building under a contract with the city of New York the Sixty-Ninth Armory. The defendants appellants interposed answers setting up certain mechanics' liens which they claimed to have filed against the amounts due by the city to the Murphy Company. The court dismissed the claim of these defendants appellants upon the ground that their lien was not filed in time, and from the judgment entered thereon these appellants appeal.

The facts as found by the trial judge are as follows: On the 26th day of January, 1904, the defendant James D. Murphy Company entered into a contract with the city of New York, by the armory board, for the erection and completion of an armory building in the city of New York in pursuance of certain plans and specifications in said contract for the sum of $619,522.33. This contract provided that the action of the architect by which the contractors are to be bound and concluded according to the terms of the contract should be that evidenced by their final certificate. That the Murphy Company entered upon the performance of its contract. That the time within which the said contract was to be completed was extended to and including the 8th day of October, 1905. That the said contract was substantially completed on the 8th day of October, 1906. That on said day the architects named in said contract delivered to the city of New York through the armory board their final certificate in connection with the completion of the work mentioned in the said contract, and filed with the armory board a certificate to the effect that the contractor, James D. Murphy Company, was entitled to payment of the amount remaining unpaid on its contract, to wit, $96,091.24, less the sum of $2,000 to be retained as a guaranty under the provisions of the contract and less the further sum of $1,000 to be retained for uncompleted work. That thereafter the board of armory commissioners of the city of New York issued its certificate to the general effect as the certificate of the architects for the payment of $95,091.24 and for the retaining of $1,000 on account of uncompleted work, and the further sum of $2,000 in accordance with the contract. That on the 8th day of October, 1906, the armory board adopted a resolution accepting the Sixty-Ninth Armory from the contractors as completed with the reservation named in the resolution, and the comptroller was authorized to pay to James D. Murphy Company the sum of $93,-091.24 for the execution of their contract for the erection of the Sixty-Ninth Regiment Armory, being the payment in full with a reservation therefrom of $1,000 until the marble tablet was properly installed, and a further reservation of $2,000 as provided in the contract for one year from the date of the issuance of the final certificate

as a guaranty for the perfect working and efficiency of the steam-heating apparatus, and that the roofs of the buildings should be made tight and any defects which may appear in the entire work remedied, and that these certificates were delivered to the proper official of the city of New York. That subsequently, and on November 17, 1906, an assistant engineer in the comptroller's office reported that the work was completed in a satisfactory manner, excepting the electric wiring and connections. That there were several serious defects in this electric work, which would take several weeks to remedy, and the engineer therefore recommended that $90,000 be paid the claimants at that time, and that $3,091.24 be retained until such time as the defective work should have been made good. Acting upon this report, the auditing bureau of the department of finance of the city of New York refused to audit the claim of the defendant Murphy Company for the sum of $93,091.24, and withheld from the said sum the sum of $3,091.24 on account of the uncompleted and defective electrical wiring of the said building and until the same should be completed in accordance with the contract, and audited the claim of the defendant James D. Murphy Company ·for the sum of $90,000. That on or about the 1st day of March, 1907, the comptroller paid to the Fourteenth Street Bank as assignee of the Murphy Company on account of said contract the said sum of $90,000. That the marble tablet referred to in the resolution of the armory board was properly installed by the Murphy Company shortly after the 8th day of October, 1906, and immediately thereafter the Sixty-Ninth Regiment of the National Guard entered into occupancy of the said building.

The court further found that on October 8, 1906, certain plumbing work required by the contract between the Murphy Company and the city of New York to be done upon the said Armory Building was uncompleted, to wit, the installation of certain water lines over the ammunition rooms in said armory, and that subsequent to October 8, 1906, the Murphy Company caused said water lines to be installed in the building, and that said work was done during the month of November, 1906; that such plumbing work consisted of two or three inch pipe; that the city of New York still retains the sum of $6,000 out of the contract price, being $2,000 retained under the contract, $1,000 to cover the installation of the marble tablet, mentioned in the resolution of the armory board of October 8, 1906, $3,091.24 to cover the uncompleted electric work mentioned in the report of the engineer, dated November 17, 1906; that the notices of the alleged lien filed with the comptroller of the city of New York and the board of armory commissioners of the city of New York by the defendants Jerome A. Jackson and others were not filed within 30 days next after October 8, 1906, the date of the completion by the defendant James D. Murphy Company of the work contemplated in its contract with the city of New York; that various sums of money were deposited by the Fourteenth Street Bank, the assignee of the Murphy Company, with the comptroller of the city of New York to discharge the liens of the appellants Jackson, Roebling Construction Company, Baker, Smith & Co., and this action was commenced on the 20th day of December, 1906.

The court thus refused to give to these lienors any portion of the money on deposit with the comptroller, but gave to each of the appellants a personal judgment against the Murphy Company for the amount due under their contracts with the Murphy Company; and the appellants appeal from the judgment refusing to enforce their liens on the moneys on deposit with the comptroller. These liens were filed under section 12 of the lien law (chapter 38, Laws 1909 [Consol. Laws, c. 33]), which provides that:

"At any time before the construction of a public improvement is completed and accepted by the state, or by a municipal corporation, and within thirty days after such completion and acceptance, a person performing work for, or furnishing materials, to a contractor, his subcontractor, assignee or legal representative, may file a notice of lien."

The lien law provides for two classes of liens—one a lien in favor of one who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof, or of his agent, contractor, or subcontractor, and one in favor of a person performing labor for or furnishing materials to a contractor, his subcontractor, or legal representative for the construction of a public improvement pursuant to a contract by such contractor with the state or a municipal corporation. The provison of filing a notice of lien in the first class of cases is contained in section 10 of the lien law. That section provides that the notice of lien may be filed at any time during the progress of the work and the furnishing of the materials, or within 90 days after the completion of the contract or the final performance or the final furnishing of the materials, dating from the last item of work performed or materials furnished. Under this provision, the 90 days commenced to run from the last item of work performed or materials furnished, and it subjects the property to improve which the materials or labor are furnished to a lien in favor of the contractor or subcontractor who furnishes such labor or materials; but a lien in favor of a person performing labor or furnishing materials for the construction of a public improvement is based upon an entirely different principle. A lien is not given upon the real property upon which the work is done, but upon the amount due or to become due on the contract between the municipal corporation and the lienor; and section 12, which provides for the filing of such lien, requires it to be filed at any time before the construction of the public improvement is completed and accepted by the state or by the municipal corporation, and within 30 days after such completion and acceptance. In one case the period within which the lien may be filed dates from the last item of work performed or materials furnished, in the other at any time before the construction of the public improvement is completed and accepted by the state or municipal corporation, or within 30 days after such completion or acceptance. The provision of section 10 which fixes the commencement of the running of the time from the final performance of the work or final furnishing of the materials and from the last item of work performed or materials furnished is omitted from section 12, affecting a public improvement, and this was in order to limit the time within which the public authorities are required to hold the payment to the con-

tractor so as to protect those who have furnished materials or ·labor for the improvement.

The question is when a public improvement is completed and accepted by the state or municipal corporation. It is quite apparent that this could not mean the contract is not completed until the slight repairs or the substitution of defective work which necessarily follow the completion of each large contract have been furnished. It must be the completion of the contract as a whole which is represented by the acceptance of the public improvement by the state or municipal corporation. If it had been intended to extend to these public improvements the provision in regard to private property, the Legislature would have used the same or equivalent words that were used in relation to such improvements, and their failure to do evidently shows an intention to restrict the right to a subcontractor beyond that which was allowed to a person furnishing materials or labor on the improvement of private property. Where the work is substantially completed and completion is accepted by the municipal authorities, it seems to me that the fact that some few and unimportant changes have to be made does not extend the time within which the lien is to be filed. It is of great importance to the state and municipal corporations that there should be a well-defined and clearly ascertained limit during which these liens could be filed so as to avoid liability by the state or municipality for work done under contracts for public improvements for which the contractors have paid. The time within which a lien must be filed can be definitely ascertained if the time commences to run as of the completion of the contract so that it is accepted by the municipality; but, if the municipal officers have to ascertain just when the last work was done in relation to unimportant repairs, there could be no possibility for a definite fixing of a period during which these liens could be filed. The subcontractors or persons furnishing materials·or labor have a right to file a lien at any time after their work is furnished before the actual completion and acceptance of the work, and after such final completion and acceptance, which is I think a definite time fixed by the public authorities, they have 30 days within which to file the notice of lien. It is not a hardship, therefore, to require them to act with promptness, and it would introduce an element of confusion into the relation between the municipality and its·contractors if there were no reason, for the public officials could ascertain the period within which a lien could be filed. Here was a contract of over $600,000, which had been completed, except that work costing a few hundred dollars was necessary for a full performance of the contract, and the architects had certified that the contract was completed. The armory board, charged with the duty of making the contract and attending to its performance, and whose certificate entitled the contractor to the money, certified that the contract was completed with the exception of the erection of a tablet which was erected within a few days, and the fact that slight repairs or additions like the insertion of a pipe to flood the ammunition room and the repairs to the electrical apparatus, or the insertion of a small tablet, would not have been a defense by the city to an action to recover the amount due on the contract. The con-

tract had been substantially completed. The architect had so certified. The public authorities having charge of the construction of the building and enforcement of the contract had so certified, and had formally accepted the building on behalf of the city of New York. It was occupied by the regiment for which it was erected; and certainly, under those circumstances, the building was completed and accepted by the municipal corporation, and any lien to be filed must be filed within 30 days after that date. To enforce this lien it was incumbent upon the lienors to prove that the lien was filed within the time required by the statute.

I think upon this evidence the finding of the court that the work was completed and accepted was sustained by the evidence and the lien in question was therefore filed after the time allowed by the statute, and was not effective. It is the completion and acceptance as certified to by the public authorities that fixes the time within which the lien must be filed.

The cases cited by the appellants relating to liens upon private property are not applicable because of the difference in the phraseology used in relation to the two classes of liens. Nor do I think that the deposit of the money with the comptroller to enable the assignee of the contractor to obtain payment of the amount due on the contract is an admission that the lien was filed within the time limited by the statute. Section 21 of the lien law provides that a lien against the amount due or to become due a contractor from the state or a municipal corporation for the construction of a public improvement may be discharged:

"(4) By the contractor depositing with the Comptroller of the state or the financial officer of the municipal corporation, or the officer or person with whom the notice of lien is filed, such a sum of money as is directed by a justice of the Supreme Court. * * * The amount so deposited shall remain with the comptroller or such financial officer or other officer or person until the lien is discharged as prescribed by subdivision one, two or three of this section."

Such a deposit necessarily takes the place of the money with the comptroller payable under the contract to which a lien would attach. If no lien ever attaches to the balance due the contractor by reason of the failure of a subcontractor to file a notice within the time fixed by the statute, no action can be maintained to enforce a lien where none was created, and a party who has made an ineffectual attempt to create a lien can have no interest in the amount so deposited. Whatever happened to the money deposited is no concern to the plaintiff, as he had no lien upon anything. The cases which have to do with undertakings given to discharge a lien have no bearing upon this question, as in that case the undertaking that was required was to pay any judgment obtained against the contractor with the city, and not merely to discharge a lien.

I think this judgment was right, and should be affirmed, with costs to the respondents against the appellants.

PATTERSON, P. J., and CLARKE and SCOTT, JJ., concur.

LAUGHLIN, J. (dissenting in part).  Separate appeals have been taken by defendants Jerome A. Jackson, Patrick H. McNulty, Baker, Smith & Co., and the Roebling Construction Company.  The appeals of Jerome A. Jackson, Baker, Smith & Co., and the Roebling Construction Company present the question as to whether their liens were timely filed, and, if not, whether they are entitled to the fund deposited for the release of the moneys due the contractor from the lien of their respective municipal liens.  In the view I take of the case, it is unnecessary to decide, in disposing of these appeals, whether the liens were or were not filed within the time prescribed by the statute.  The undisputed evidence shows that liens in due form were filed, and that the claims upon which they were filed were claims for which municipal liens against the fund due or to grow due the contractor were authorized.  The alleged invalidity of the lien is predicated upon the claim that the work had been completed and accepted more than 30 days before they were filed, and on that point a serious question is presented upon the evidence as to whether the work was completed and accepted within the fair intent and meaning of the statute.  I am of opinion, however, that all questions with respect to the validity of the liens and with respect to the liability of the municipality to the contractor were eliminated when the money was deposited to obtain a release of the funds from the municipal liens.  There has at most times, if not at all times, been a marked and well-defined distinction made by the Legislature between liens for work, labor, and materials performed or furnished on public works, and on private contracts—in other words, between municipal and other mechanics' liens—and this distinction has frequently been expressed by the courts.  Pierson v. Jackman, 27 Misc. Rep. 425, 58 N. Y. Supp. 344, affirmed 47 App. Div. 625, 62 N. Y. Supp. 1145; Hawkins v. Mapes-Reeves Construction Co., 82 App. Div. 72, 81 N. Y. Supp. 794; McDonald v. Mayor, 113 App. Div. 625, 99 N. Y. Supp. 122.  For a long time this distinction was shown by the express language of the statute with respect to the provisions of an undertaking to discharge a municipal lien, and the provisions of an undertaking to discharge other mechanics' liens.  In the former case it was formerly expressly provided that the undertaking should be conditioned for the payment of any judgment recovered on the claim for which the lien was filed, and in the latter for the payment of any judgment recovered against the property.  In the case of mechanics' liens, other than municipal liens, where the undertaking was required by statute to be conditioned for the payment of any judgment recovered against the property, of course, it was essential to the liability of the surety on the bond that the validity of the lien should be established, for otherwise there could be no judgment against the property; but in the case of municipal liens, the Legislature being concerned only with the payment of claims against the contractor on account of the contract work, the question to be determined in the action, and upon which the liability of the surety as well as of the principal in the undertaking given would depend, was the liability of the contractor to the lienor.  It is to be borne in mind that municipal liens are not authorized in favor of the contractor, but only in favor of those asserting claims against him for work or labor performed or materials

delivered on account of the contract; whereas, in the case of other mechanics' liens, the contractor as well as his subcontractor may file them, and they run, not against a fund to which the contractor is entitled, but against the property of the owner. The provisions of the municipal lien law with respect to giving an undertaking to release the fund are now the same in effect as they were when considered by this court in Hawkins v. Mapes-Reeves Construction Co., supra, and there is no material difference on the question now under consideration between depositing money and giving an undertaking to release the fund, and for that matter there never has been any difference in this regard. Mertz v. Press, 99 App. Div. 443, 450, 91 N. Y. Supp. 264, affirmed 184 N. Y. 530, 76 N. E. 1100. Section 20 of the lien law (now Consol. Laws, c. 33, § 21), provides as follows:

"A lien against the amount due or to become due a contractor from the state or a municipal corporation for the construction of a public improvement may be discharged as follows:

"(1) By filing a certificate of the lienor or his successor in interest, duly acknowledged and proved, stating that the lien is discharged.

"(2) By lapse of time, when three months have elapsed since filing the notice of lien, and no action has been commenced to enforce the lien.

"(3) By satisfaction of a judgment rendered in an action to enforce the lien.

"(4) By the contractor depositing with the comptroller of the state or the financial officer of the municipal corporation, or the officer or person with whom the notice of lien is filed, such a sum of money as is directed by a justice of the supreme court, which shall not be less than the amount claimed by the lienor, with interest thereon for the term of one year from the time of making such deposit, and such additional amount as the justice deemed sufficient to cover all costs and expenses. The amount so deposited shall remain with the comptroller or such financial officer or other officer or person until the lien is discharged as prescribed in subdivision one, two or three of this section.

"(5) Either before or after the beginning of an action by a contractor executing an undertaking with two or more sufficient sureties, who shall be freeholders, to the state or the municipal corporation with whom the notice of lien is filed, in such sums as the court or a judge or justice thereof may direct, not less than the amount claimed in the notice of lien, conditioned for the payment of any judgment which may be recovered in an action to enforce the lien. The sureties must together justify in at least double the sum named in the undertaking. A copy of the undertaking with notice that the sureties will justify before the court or a judge or justice thereof at the time and place therein mentioned must be served upon the lienor, not less than five days before such time. If the lienor cannot be found, such service may be made as prescribed in subdivision four of section nineteen of this article. Upon the approval of the undertaking by the court, judge or justice, an order shall be made discharging such lien. The execution of such undertaking by any fidelity or surety company authorized by the laws of this state to transact business shall be equivalent to the execution of such an undertaking by two sureties and such undertaking, if excepted to, shall justify through its officers or attorney in the manner required by law of fidelity and surety companies. Any such undertaking may be executed in such undertaking as surety by the hand of its officers or attorney duly authorized thereto by resolution of its board of directors, a certified copy of which resolution under the seal of such company shall be filed with each undertaking. Except as otherwise provided herein the provisions of article five of title six of chapter eight of the code of civil procedure are applicable to an undertaking given for the discharge of a lien on account of public improvements."

Although the Legislature by these statutory provisions has not expressly prescribed, as it formerly did, that the undertaking should be

conditioned for the payment of any judgment recovered on the claim, I think there was no intention by the change in phraseology to change the effect of the statute, for, by section 3412 of the Code of Civil Procedure then in force, it had been expressly provided that in an action to enforce a mechanic's lien a personal judgment might be recovered, even though the lien should not be established. This court in Hawkins v. Mapes-Reeves Construction Co., supra, gave full effect to this provision of the Code of Civil Procedure, but on appeal the Court of Appeals, deeming the lien valid, refrained from deciding the question as to whether a personal judgment could be recovered if the lien should be declared invalid. Since, however, the Court of Appeals has decided, as we then decided, that a personal judgment may be recovered against any party liable, even though the lien be invalid. Bradley & Currier Co. v. Pachteau, 175 N. Y. 492, 67 N. E. 1080; Abbott v. Easton, 195 N. Y. 372, 88 N. E. 572. Therefore the plain effect of the provisions of subdivision 5 of section 20 of the lien law, herein quoted, is, I think, to render both principal and surety liable if the claim upon which the lien was filed be established, even though the lien be declared invalid. If the Legislature, by this change in the phraseology of the statute from the provision declaring that the undertaking should be conditioned for the payment of any judgment recovered on the claim to the provision declaring that it should be conditioned for the payment of any judgment recovered in an action to enforce the lien, intended to require as a condition to the right to recover the establishment of the validity of the lien, I think it would have so provided, or would have employed language somewhat similar to that employed in the provision with respect to other liens, wherein it is provided that the undertaking shall be conditioned for the payment of any judgment recovered against the property. Lien Law, § 18 (now Consol. Law, c. 33, § 19). It is no answer to this contention to say that the Legislature could not have made the undertaking conditioned upon the recovery of a judgment against the fund which had been released by the giving of the undertaking, or the deposit of the money, and presumably disbursed, for it has consistently always so provided in the case of liens against real property, notwithstanding the fact that the liens were discharged by the giving of the undertaking or the deposit of the money; and the courts, to give effect to the intention of the Legislature, have decided that in such case the judgment becomes one in form only against the property. The decisions to this effect were so numerous that it is presumed that they were known to the members of the Legislature; and, had that body intended to make the provisions with respect to municipal liens analogous to those with respect to other liens, it is reasonable to assume that it would have substantially followed the phraseology of the statute in respect to other liens, using instead of the word "property" the word "fund," so that the undertaking would be conditioned for the payment of any judgment recovered against the fund in the one case, and against the property in the other, and under the decisions of the courts in each instance the judgment would then become a judgment in form only against the fund or property as the case might be. The learned counsel for the respondent cited the case of Uvalde Asphalt Paving Co. v.

City of New York, 191 N. Y. 244, 84 N. E. 83, as, in effect, overruling the decision of this court in Hawkins v. Mapes, supra, on this point. That case is clearly distinguishable upon the ground that the lien there in part was filed for moneys loaned, for which there was no authority to file a lien. Of course, all of the provisions of the mechanics' lien law with respect to the giving of undertakings and the deposit of money to release a fund or property from the lien were only intended for the benefit of those who had claims upon which they were authorized to file liens, and when, as in the case of Uvalde Asphalt Paving Co. v. City of New York, supra, a lien was filed on a claim for part of which a lien was authorized and for part of which a lien was not authorized, the claimant could acquire no new rights by virtue of the deposit of money, or the giving of an undertaking, with respect to that part of the claim for which he was not authorized to file a lien.

It is claimed that the case is to be decided upon the principles of equity, and that because the contractor had assigned his claim to the fund, and the money for the discharge of the lien was deposited by the assignee of the contractor, a different situation is presented requiring a decision different from that which would be if the money had been deposited by the contractor. I am of the opinion that there is no force in this contention. Although the courts have decided that an assignee of a contractor who is entitled to the fund may give the undertaking or deposit the money for the release of the fund, yet it will be observed that in doing so he steps into the shoes of the contractor, and does so in the right of the contractor, for the contractor alone is authorized by the statute to take those steps.

The lien filed by McNulty was disregarded by the comptroller as having been filed more than 30 days after October 8, 1906, and no undertaking was given or money deposited to discharge it. With respect to that lien I agree with Mr. Justice INGRAHAM that it was filed too late; but for the reasons already stated I am of opinion that the other appellants were entitled to receive the fund deposited to discharge these liens to the extent necessary to satisfy the claims for which the liens were filed and as to them I therefore vote for reversal.